## Lackawaxen Water & Sewer Company, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued February 1, 1984, before Judges ROGERS, PALLADINO and BARBIERI, sitting as a panel of three.

*Christopher C. Conner,* with him, *Charles B. Zwally, Shearer, Mette & Woodside,* for petitioner.

*Terrance J. Fitzpatrick,* Assistant Counsel, with him, *Louise A. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE BARBIERI, October 2, 1984:

The Lackawaxen Water & Sewer Company (Lackawaxen) appeals here from two orders of the Pennsylvania Public Utility Commission (Commission) directing it, *inter alia,* to "return" sewer and water line connection fees paid by property owners in two developments known as Masthope Rapids and Falling Waters at Masthope. We reverse.

Masthope Rapids and Falling Waters at Masthope are resort communities which were developed on two contiguous parcels of land by Masthope Rapids, Inc. and Falling Waters at Masthope, Inc. respectively. As these communities were built a common water and sewer system was installed by the developers. Individual lots were then sold subject to a restrictive covenant which required the purchaser or his or her successor in title to pay a $250 sewer line and a $250 water line

connection fee to the developers if and when the land-owner decided to connect his or her property to the communities' water and sewer system. These utility systems commenced operations in 1977 without the benefit of a certificate of public convenience, but charged no fees other than the aforementioned connection fees.

At some point thereafter which is not disclosed in the record before us the water and sewer systems within the communities were transferred to Lackawaxen. Lackawaxen then sought and obtained a certificate of public convenience and commenced monthly charges for water and sewer service in April of 1981 pursuant to a duly filed tariff. Thereafter, on March 9, 1981, the Masthope Property Owners Council (Council), purporting to represent all Masthope Rapids property owners, filed a formal complaint with the Commission alleging therein, *inter alia,* that "Lackawaxen . . . is attempting to charge the individual property owners a hook-up fee of $250.00, which we believe to be contrary to law." Twelve other Masthope Rapids property owners apparently filed similar complaints, although these do not appear in the record before us, and these thirteen complaints were consolidated for disposition. In addition, a separate complaint was filed on August 21, 1981, by Charles Fingerle, a resident of Masthope Rapids, which also raised the question of the legality of the $250 water and sewer line connection fees.

Following a hearing on the Council's complaint, the issuance of an initial decision, the filing of exceptions, the disposition of these exceptions, an appeal by the complainants to the Commission, and the issuance of a remand order by the Commission, the administrative law judge (ALJ), without taking any additional evidence, issued an Initial Decision On Remand in which he concluded, *inter alia,* (1) that the sewer and water line connection fees which had been

paid by the residents of Masthope Rapids and Falling Waters at Masthope were unreasonable and (2) that Lackawaxen would have to refund these fees, even though they had not been paid to Lackawaxen, since "[w]hen Lackawaxen Water and Sewer Company acquired the water and sewer systems from the developers, it also acquired its various obligations, liabilities and responsibilities." The ALJ further noted that he felt that Lackawaxen should be responsible for refunding these fees since Lackawaxen, Masthope Rapids, Inc., and Falling Waters at Masthope, Inc. had common owners. A similar order was issued in the Fingerle case, and after the filing and disposition of exceptions in these cases, and the filing of appeals to the Commission, the Commission dismissed the appeals and affirmed the ALJ's decisions with certain modifications not relevant here. The present appeals followed, and were consolidated for disposition by an order of this Court.

Before this Court Lackawaxen maintains that the Commission erred as a matter of law by directing it to "return" water and sewer line connection fees which had not been paid to it. We agree.

The Commission notes in its brief to this Court that "[t]he general rule is that when one company sells or transfers all of its assets to a successor company, the successor does not acquire the liabilities of the transferor corporation merely because of its succession to the transferor's assets." *Dawejko v. Jorgensen Steel Co.*, 290 Pa. Superior Ct. 15, 18, 434 A.2d 106, 107 (1981). The Commission, citing several product liability cases, however, notes that there is a recognized exception to this general rule where the purchasing corporation is merely a continuation of the selling corporation, *see Husak v. Berkel, Inc.*, 234 Pa. Superior Ct. 452, 341 A.2d 174 (1975), and asserts that Lackawaxen should therefore be liable for the refund-

ing of the connection fees since, in the Commission's view, the record shows that Lackawaxen is simply the successor to the de facto public utility business of the developers. We disagree.

The cases relied upon by the Commission all involve instances where a transferor corporation transfers *all* of its assets to a new corporation which continues the transferor's business, and where the transferor corporation, after the transfer of assets, ceases operations or no longer has substantial assets with which to meet its contractual or tort obligations. Under such circumstances a successor corporation may be held liable for the obligations of its predecessor in instances where a contrary conclusion would sanction fraud or would prevent individuals injured by defective products from obtaining recovery from those best able to bear the cost of injuries sustained from these products. *Dawajko; Husak*. Here, however, the record shows that the contractual right to receive the connection fees was never transferred to Lackawaxen, that Lackawaxen has not received any economic benefit from the fees that have so far been collected, and in fact would have difficulty paying back these fees under its current rate structure, and that the development companies that received the economic benefit from the collection of these fees are still in existence and have substantial assets. Under such circumstances we do not believe that the Commission could properly order Lackawaxen to "return" the connection fees paid to third parties.

Finally we note, despite Lackawaxen's assertions to the contrary in its brief to this Court, that the Commission would not be precluded from examining the reasonableness of the connection fees contractually imposed by the development companies in a proceeding instituted against those companies. A public utility cannot divest the Commission of its plenary power

to regulate rates and the terms and conditions of service by entering into a private contract. *See Bell Telephone of Pennsylvania v. Pennsylvania Public Utility Commission*, 53 Pa. Commonwealth Ct. 241, 417 A.2d 827 (1980). *Cf.* Section 508 of the Public Utility Code, 66 Pa. C. S. §508 (Authority of Commission to vary, reform, and revise contracts).

### Order in 29 C.D. 1983

Now, October 2, 1984, the order of the Pennsylvania Public Utility Commission adopted November 19, 1982 and entered December 7, 1982 is hereby reversed insofar as it orders the Lackawaxen Water & Sewer Company to reimburse $500 to Charles Fingerle, for water and sewer line connection fees paid by him to a third party.

### Order in 114 C.D. 1983

Now, October 2, 1984, the order of the Pennsylvania Public Utility Commission adopted November 19, 1982 and entered December 29, 1982 is hereby reversed insofar as it orders the Lackawaxen Water & Sewer Company to return water and sewer line connection fees.

Judge PALLADINO concurs in the result only.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. One entity, a decedent's estate, owns all of the capital stock of Masthope Rapids, Inc., Falling Waters at Masthope, Inc., and Lackawaxen Water & Sewer Company. The two corporations first named created two residential developments. Lackawaxen Water & Sewer Company was created by the owner of the development corporations as a vehicle for serving the residential lots with water and sewer. The hook-up charges in question were improperly imposed by and paid to the development cor-

porations. It seems that these funds were not turned over to Lackawaxen with the other water and sewer facilities.

I believe that the Public Utility Commission properly disregarded the several corporate identities in ordering Lackawaxen to pay the lot owners the unlawfully exacted hook-up charges. The separate existence of corporate entities controlled by the same person may be disregarded whenever justice and public policy demand. Surely justice and public policy demand such in this case. *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (1938). I would affirm the Public Utility Commission's order and would not, as the majority does, suggest that the respondent property owners should commence new proceedings against the developer corporations.